CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 1 1 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

DONALD KENT HOFFMAN,                    )
                                        )    Civil Action No.: 7:12-cv-394
    Plaintiff,                     )
v.                                      )    **Memorandum Opinion**
                                        )
DAIMLER TRUCKS NORTH                    )    Hon. James C. Turk
AMERICA, LLC, et al.,                   )    Senior United States District Judge
                                        )
    Defendants.                    )

In this diversity action, Plaintiff Donald Hoffman seeks recovery because he purchased a recreational vehicle ("RV") that he insists is a "lemon." The RV Hoffman purchased was manufactured by Thor Motor Coach and sold by Camping World. Daimler Trucks provided the chassis[1] for the RV and Drew Industries[2] supplied certain components. Hoffman alleges that the RV is defective, Defendants are liable for breaching express and implied warranties, and Daimler is liable under Virginia's Motor Vehicle Warranty Enforcement Act ("Lemon Law"). Va. Code Ann. § 59.1-207.11 et seq.

This matter is before the Court on four Motions to Dismiss: Thor and Camping World's Motion to Dismiss,[3] ECF No. 31, Daimler's Motion to Dismiss, ECF No. 45, Drew's Motion to Dismiss, ECF No. 50, and Hoffman's Motion to Dismiss Camping World's Counterclaim for Attorney's Fees. ECF No. 40. The parties have filed all requisite responses and replies, the Court

---

[1] A chassis is the frame of a vehicle, upon which the rest of the vehicle is built.

[2] The Amended Complaint lists the name of Drew Industries as "Drew Industries, Inc., trading as Lippert Components, Inc." ECF No. 28 at 1. In its Brief in Support of its Motion to Dismiss, Drew Industries asserts that "Lippert Components is a wholly owned subsidiary of Drew Industries." ECF No. 50-1 at 5 n.1. The Court will refer to this party simply as "Drew" throughout the Memorandum Opinion and Order.

[3] All parties are separately represented, with the exception of Thor and Camping World, who are represented by the same attorneys.

heard oral argument on all motions on March 5, 2013, and the matter is now ripe for disposition. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Thor and Camping World's Motion to Dismiss, GRANTS IN PART and DENIES IN PART Daimler's Motion to Dismiss and grants Plaintiff leave to amend to allege the warranty claims against Daimler with greater factual specificity, GRANTS Drew's Motion to Dismiss, and DENIES WITHOUT PREJUDICE Hoffman's Motion to Dismiss Camping World's claim for attorney's fees.

## I.   FACTS[4]

Donald Hoffman purchased a Tuscany model RV, manufactured by Thor Motor Coach, on October 29, 2010, paying $196,166.72 in cash. ECF No. 28-1 at 1. In deciding to purchase the RV, Hoffman relied on Thor's reputation, express representations made about the RV by Thor agents at an RV show, and Thor literature that the vehicle was fit for ordinary purposes and the specific purposes for which Hoffman planned to use the RV. Relying on these representations, Hoffman purchased the RV from Camping World in Roanoke, Virginia, the nearest Thor dealer to his home in Fishersville, Virginia. Hoffman was not given any warranty information prior to completing the purchase. ECF No. 28 ¶ 10.

Almost immediately, Hoffman noticed numerous problems with the RV and returned it to Camping World for repairs. See ECF No. 28-2 at 1-17. So began a pattern: Hoffman would notice problems and bring in the RV for repairs and Camping World would repair the RV. Hoffman noticed further problems—or the "fixed" problems would re-occur—and Camping World would again attempt repairs. The repair records attached to the Amended Complaint reveal the dates when the RV was at Camping World for repairs: from December 6, 2010 to

---

[4] For purposes of the motion to dismiss, the facts in the complaint are taken to be true. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)).

December 22, 2010; from February 2, 2011 to March 31, 2011; from May 27, 2011 to June 11, 2011; and from July 20, 2011 to August 12, 2011. Id. Specifically, the Amended Complaint lists these defects:

> Automatic leveler and indicator lights do not work; water and waste water indicator lights do not work at all; aisle lights in coach do not work; deadbolt does not work, door does not lock from the inside; slide-out does not return; the door leaks water into the cabin when it rains; sprayer on kitchen sink leaks; there is no heat; the front seat will not swivel or recline as it should; the map light does not work; the airbags deflate; there is no GPS as promised; there is no satellite television as promised; the driver's side mirror will not stay in place; control panel is not functioning properly; window shades do not function properly; the steps are installed improperly, causing rubbing against the body; a key was broken off inside the access panel to the outside television; the batteries die quickly, as well as multiple other functional and cosmetic defects, resulting in multiple repair attempts that kept the RV out of service for 9 of the first 10 months of ownership.

ECF No. 28 ¶ 11. Hoffman cites as "ongoing nonconformities" "all the batteries dying, various indicator lights not working, the lock not working properly, airbag deflation, slide out not returning, no heat, [and the] door leaking during rain." Id. ¶ 15. Additionally, during one of the repair attempts at Camping World, the RV developed a mouse infestation because of being left outside. Id. ¶ 13. The repair records also refer to Hoffman's attempts to coordinate warranty coverage for the RV with Daimler. ECF No. 28-2 at 3, 9 (Camping World telling Hoffman that an issue with the air bags would have to be addressed with Daimler, trading as Freightliner, and Hoffman reporting back that Freightliner said it was "ok as per truck stand[a]rds"); see also ECF No. 54 at 3-4 (including more detail as to Hoffman's interactions with Daimler).

The general warranty for the RV lasted for twelve months, ending on or about October 29, 2011. As Hoffman advised the Court at oral argument, sometime before this period expired he attempted to revoke his acceptance of the RV by dropping it off at Camping World and seeking a refund of the purchase price. The RV remains at Camping World pending the outcome of this litigation.

3

## II.  PROCEDURAL HISTORY

This case, although still in its early stages, has already amassed a significant procedural history. Hoffman filed his original Complaint in the Henrico County Circuit Court on April 26, 2012, just three days before eighteen months had transpired since the purchase of the RV. ECF No. 1-1 at 1. The original Complaint consisted of two claims: Claim 1 alleged breaches of express and implied warranties and named all four Defendants; and Claim 2 alleged a violation by Thor of Virginia's Lemon Law.

Hoffman served Thor and Camping World, who then removed the case based on diversity jurisdiction[5] to the Eastern District of Virginia on May 23, 2012. ECF No. 1. Since the sale of the RV took place in Roanoke and Hoffman resides in Fishersville—both of which are located in the Western District of Virginia, the case was transferred to the Western District on August 21, 2012. ECF No. 16. The three parties then in the litigation soon agreed, on or about October 22, 2012, that Hoffman could amend his Complaint.

Until this point, Hoffman still had not served Daimler and Drew. On December 12, 2012, the Court issued an Order to Show Cause why Hoffman had not served these Defendants within the 120 days prescribed by Rule 4(m). ECF No. 18; see Fed. R. Civ. P. 4(m). Hoffman responded that he would soon serve the other defendants, ECF No. 23, noting that these defendants would not be prejudiced since he would still serve them within the one year provided for service under state law, Va. R. Civ. P. 3:5(e), and the Court granted an extension pursuant to its authority under Rule 4(m). ECF No. 28. Hoffman served Daimler and Drew soon after, in January 2013. ECF Nos. 38, 39.

---

[5] Hoffman is a Virginia resident. Neither Thor nor Camping World is incorporated or maintains its principal place of business in Virginia. Neither Daimler nor Drew has provided information concerning its states of incorporation or principal places of business to the Court.

Plaintiff also filed an Amended Complaint on December 14, 2012, after the Court issued the Order to Show Cause and before he served Daimler and Drew. See ECF No. 28 (the Amended Complaint was originally filed on December 14, 2012, but was re-filed on the 28th in the appropriate manner in the CM/ECF system). The Amended Complaint is similar to the original Complaint, but changed the defendant named in the Lemon Law claim from Thor to Daimler.[6]

The Defendants then filed three motions to dismiss: one by Thor and Camping World, and one each from Drew and Daimler. Plaintiff also filed his Motion to Dismiss Camping World's claim for attorney's fees. The Defendants' motions center on the validity of the various warranty disclaimers and limitations, as well as whether the Amended Complaint states a claim. Camping World's counterclaim seeking attorney's fees relies on a provision in the purchase contract that grants the prevailing party the opportunity to recover "its costs of suit, including reasonable attorney's fees" "as the result of a breach of any provision of [the purchase contract]." ECF No. 28-1 ¶ 12.

## III.  LEGAL STANDARDS

To properly state a claim upon which relief can be granted, Plaintiff's allegations must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "It requires the Plaintiff to articulate facts, when accepted as true, that 'show' that the Plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis, 588 F.3d at 193 (quoting Iqbal, 556 U.S. at 678). A motion to dismiss may raise a statute of limitations defense if the time bar is apparent from the face of the complaint. Dean v. Pilgrims Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005).

---

[6] The reason for this change is that there is some authority that the Lemon Law does not apply to the completed motor home, just the "self-propelled motorized chassis," Va. Code Ann. § 59.1-207.11, which Daimler manufactured.

Relevant to several of the motions are provisions of federal and state law that govern the creation and disclaimer of warranties related to consumer purchases. First is the federal Magnuson-Moss Warranty—Federal Trade Commission Improvement Act of 1975, 15 U.S.C. §2301 et seq. ("MMWA" or "the Act"). In essence, the MMWA sets federal minimum standards for warranties. A seller is not required to offer an express or written warranty under the MMWA; but if a seller offers such a warranty, the seller must comply with the Act's requirements. The MMWA stipulates that a seller may not disclaim or modify implied warranties if that seller offers any written warranty to a consumer. 15 U.S.C. § 2308(a). The MMWA also requires that written warranties be made available to the consumer prior to the sale of the product. 15 U.S.C. § 2302(b)(1)(A); 16 C.F.R. § 702.3.

The MMWA operates in conjunction with Virginia's version of the Uniform Commercial Code ("VUCC"). Indeed, the VUCC is operative even when the MMWA is not; for example, when a written warranty is not offered to a consumer. The VUCC permits the disclaimer of express and implied warranties, but provides requirements should a seller attempt to do so. Sections 8.2-316 governs the disclaimer of warranties—express warranties by subsection 1 and implied warranties by subsection 2:

> (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this title on parol or extrinsic evidence (§ 8.2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.
> (2) . . . to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.

Va. Code Ann. § 8.2-316.

Another provision of the VUCC states that the default statute of limitations on a VUCC cause of action is four years, but also allows the parties to the transaction, "[b]y the original agreement," to "reduce the period of limitation to not less than one year." Id. at § 8.2-725(1).

## IV. ANALYSIS

As a preliminary matter, the Court has determined that it need not convert the motions to dismiss to motions for summary judgment, despite its reliance on the express warranties filed by the Defendants. The Court may rely on exhibits attached to the complaint, see Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 176 (4th Cir. 2009); 5B Charles A. Wright & Arthur P. Miller, Federal Practice and Procedure § 1357 (3d ed. 2012), and pertinent documents that a plaintiff fails to attach to the complaint if a defendant has attached them to a motion to dismiss, especially if a plaintiff has referred to the documents in the complaint, see Davis v. George Mason Univ., 395 F. Supp. 2d 331, 335 (E.D. Va. 2005), aff'd, 193 F. App'x 248 (4th Cir. 2006); 5A Wright & Miller § 1327, without converting the motion to dismiss into a motion for summary judgment. Hoffman specifically alleges, "Express Limited Warranties were given by each defendant." ECF No. 28 at ¶ 28. The only documents the Court relies on that Hoffman did not attach to the Amended Complaint are the "Express Limited Warranties" referred to in the Amended Complaint. The Court is therefore satisfied that it need not convert the motions to dismiss to motions for summary judgment.

### A. Claims against Camping World

Hoffman contends that Camping World made express warranties about the RV before the sale and that Camping World did not validly disclaim both express and implied warranties. Camping World argues that it validly disclaimed express warranties by means of a merger clause

and implied warranties because its disclaimer was conspicuous under the VUCC. Accordingly, Camping World argues it cannot be held liable for breaches of these warranties.

### 1. Express Warranties

Camping World did not offer Hoffman an express written warranty; thus, the only express warranties Hoffman relies on are oral.[7] In addition, because no "written warranty" was given, the MMWA is inapplicable, see 15 U.S.C. § 2308, and claims against Camping World are governed by the VUCC.

Section 8.2-316(1) of the VUCC regulates the disclaimer of express warranties. This section not only limits disclaimers, it also makes clear that evidence of pre-contractual oral representations may be barred by § 8.2-202, the section on parol evidence. Section 8.2-202[8] prohibits the consideration of contradictory or supplementary oral terms if the parties intended the writing to be "a complete and exclusive statement of the terms of the agreement." This provision is "intended to protect the seller 'against false allegations of oral warranties.'" 1 White, Summers, & Hillman, Uniform Commercial Code § 13:4 (6th ed. 2012) (quoting Comment 2 to UCC § 2-316).

Here, a merger clause in the Buyer's Order—the RV purchase contract between Hoffman and Camping World—makes clear that the parties intended the Buyer's Order to be "a complete and exclusive statement of the terms of the agreement." See Va. Code Ann. § 8.2-202. That

---

[7] The Court accepts as true Hoffman's allegation that Camping World made oral representations about the quality and dependability of the RV and assumes that these oral representations became express warranties, per Va. Code Ann. § 8.2-313.

[8] "Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
. .
(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." Va. Code Ann. § 8.2-202.

merger clause states that the "front and back of this buyer's order, along with other documents signed by Purchaser(s) in connection with this order, comprise the entire agreement between the parties affecting this purchase. No oral agreements or understandings shall be binding." ECF No. 28-1 at 1.

Thus, even if Camping World made express oral warranties prior to the sale, they were effectively disclaimed. See 1 White, Summers, & Hillman § 13:4 ("An effectively worded merger or integration clause can have the same effect as a disclaimer."); see also King Indus., Inc. v. Worlco Data Sys., Inc., 736 F. Supp. 114, 118 (E.D. Va. 1989) ("[O]ral statements [that constituted an express warranty] would not be admissible to contradict or vary the disclaimer of express warranties clause contained in the integrated agreement"), aff'd, 900 F.2d 253 (4th Cir. 1990). Because any oral representation by Camping World that could become the basis for an express warranty claim was disclaimed by the merger clause, the Court grants Camping World's Motion to Dismiss Hoffman's claim for breach of express warranties.

## 2. Implied Warranties

Hoffman also claims that Camping World breached implied warranties, and Camping World again contends that it validly disclaimed any implied warranties. Virginia law implies warranties in sales by a merchant, unless they are validly excluded or modified. See Va. Code Ann. § 8.2-314 (implied warranty of merchantability implied in all sales); Va. Code Ann. § 8.2-315 (implied warranty of fitness for a particular purpose implied when certain requirements are met). To effectively disclaim implied warranties a written disclaimer must be "conspicuous" and in the case of the implied warranty of merchantability must mention "merchantability." Va. Code Ann. § 8.2-316(2). Conspicuous "means so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it." Va. Code Ann. § 8.1A-

201(b)(10).[9] Factors for determining conspicuousness include: size of the font used in the disclaimer language, type of the font, location on the page relative to other clauses, whether the clause is located on the first page, whether the clause is visually set apart on the page from the other clauses, color of the font, and the distinctiveness of the heading. See generally William H. Danne, Jr., Annotation, Construction and Effect of UCC § 2-316(2) Providing That Implied Warranty Disclaimer Must be "Conspicuous", 73 A.L.R. 3d 248 (1976). Camping World argues that the disclaimer of implied warranties is conspicuous because the paragraph in which the disclaimer language appears is in all capital letters. Hoffman argues that the clause is not conspicuous.[10]

The disclaimer clause is located in the middle of the back page of the front-and-back Buyer's Order. ECF No. 28-1 at 1-2. The language referring the buyer to the back page—the merger clause—is located in the middle of the front page in an extremely small font size. The signatures of Hoffman and the dealer representative appear on the bottom of the first page and no signatures or initials appear on the back of the page. The heading of the disclaimer clause is of the same font type and size as those for the other paragraphs on the back of the Buyer's Order. Although the disclaimer clause is in capital letters, two other paragraphs on the back page are also in capital letters. While Camping World claims that the font size of the disclaimer clause is

---

[9] This section lists some examples of conspicuousness, but Comment 10 to the UCC section makes clear that "the test is whether attention can reasonably be expected to be called to it. The statutory language should not be construed to permit a result that is inconsistent with that test." Comment 10 to UCC § 1-201; see also In re Varney Wood Prods., Inc., 458 F.2d 435, 437 (4th Cir. 1972) (noting that although the Official Comments of the UCC are not binding upon courts, they nonetheless "represent powerful dicta").

[10] As Hoffman argues, somewhat relevant to the conspicuousness inquiry is that just above the merger clause is a box containing an "as is" clause, with lines for the buyer to sign and date. Hoffman did not sign or date anything in the "as is" box. In fact, Camping World advises that it only uses the "as is" clause for the purchase of used vehicles. ECF No. 32 at 4. The non-use of the "as is" clause for purchases of new vehicles "giv[es] rise to the realistic assumption that the dealer was making some sort of warranty," Morris v. Winnebago Indus., 71 Va. Cir. 292, 293, 2006 Va. Cir. LEXIS 239, at *2 (July 18, 2006), in contraposition to Camping World's argument that it made no warranties for the purchase of the new RV. The blank "as is" clause further bolsters the Court's conclusion that the disclaimer of implied warranties was not conspicuous such "that a reasonable person against whom it is to operate ought to have noticed it." See Va. Code Ann. § 8.2-316(2).

larger than that of the surrounding paragraphs, it appears to be the same size. It does not appear that the disclaimer clause was printed in a different color. Finally, the disclaimer clause is not set off from the other paragraphs on the back side of the order in any distinctive way. Based on these factors, the Court determines that the disclaimer clause is not conspicuous for purposes of disclaiming the implied warranties.[11] The Court therefore denies Camping World's Motion to Dismiss as to the implied warranties.

## B. Claims against Thor

### 1. Timeliness of Hoffman's Claims

Thor contends that Hoffman's claims against it are time-barred. For support, Thor relies on the third page of the Thor express warranty,[12] where it purports to reduce the limitation period to ninety days:

> ANY ACTION TO ENFORCE THIS LIMITED WARRANTY OR ANY IMPLIED WARRANTIES SHALL NOT BE COMMENCED MORE THAN 90 DAYS AFTER THE EXPIRATION OF THE WARRANTY COVERAGE PERIOD DESIGNATED ABOVE.

ECF No. 36-1 at 11. On the first page of the express warranty, there are two warranty coverage periods: a twelve-month general warranty and twenty-four-month warranty on the skeleton

---

[11] The cases cited by Camping World are not to the contrary. The Court will not individually discuss them in detail, but in each case where the disclaimer was found to be conspicuous, the disclaimer clause contained more indicia of conspicuousness than is present here. See, e.g., Reibold v. Simon Aerials, Inc., 859 F. Supp. 193, 195 (E.D. Va. 1994) (finding that a disclaimer in "large, all capitalized print set off from the text" was conspicuous); Brown v. Range Rover of N. Am., 33 Va. Cir. 104 (1993) (finding conspicuous a provision on the back of the sales contract in all capital letters, but it was italicized in two separate indented paragraphs and a statement just above the signature line on the front side—in capital letters and red ink—alerted the buyer to the provisions on the back side). The only exception is Young v. J.I. Case Co., No. 3:90CV00630, 1994 WL 506403 at *1 (E.D. Va. 1991), an unpublished decision that stated without analysis or discussion of the other conspicuousness factors that "[t]he fact that the disclaimer is in capital letters is sufficient to find that the disclaimer is conspicuous." The Court declines to follow this non-precedential opinion and focuses instead on the statutory test of whether a reasonable person would notice the disclaimer provision.

[12] Hoffman has alleged that he "was not given any warranty information of any defendant prior to purchasing the vehicle," ECF No. 28 ¶ 10, though he apparently received a copy of Thor's owner's manual—which contained the warranty information—soon after purchasing the RV. Indeed, Hoffman began receiving repairs under the terms of the express warranty within six weeks of his purchase. See ECF No. 28 ¶ 12.

frame. Id. at 9. Thor argues that this ninety-day limitation period, combined with the twelve-month general warranty, means that Hoffman must have commenced litigation within fifteen months of the purchase of the RV. Since Hoffman did not do so until nearly eighteen months had elapsed, Thor argues his claim is time-barred.

In response, Hoffman offers two main arguments: the limitation period was not part of "the original agreement" for purposes of § 8.2-725(1) and is therefore ineffective, and the ambiguity in the phrase "the warranty coverage period designated above" should be construed against the drafter to refer to the total twenty-four-month warranty period instead of that of the twelve-month general warranty.[13]

The principal support Thor cites for its argument that the limitation period was part of "the original agreement" is Merricks v. Monaco Coach Corp., No. 3:08CV00047, 2008 WL 5210856 (W.D. Va. Dec. 15, 2008). Like the present case, the plaintiffs in Merricks purchased an RV and immediately began experiencing problems. Unlike the present case, the plaintiffs in Merricks received extensive information on the warranties prior to the purchase of the RV. The dealer who sold them the RV "briefly explained that the RV was covered by warranties of different periods, and explained what each period was." Id. at *2. Although Mr. Merricks testified that he saw the written warranty for the first time inside the vehicle after the purchase, he and his wife "signed a form entitled 'Acknowledgement of Receipt of Motorized Warranty/Product Information.' That form stated that 'I received and read a copy of the Monaco Coach Corporation limited warranty before I purchased this recreational vehicle. . . .'" Id.

---

[13] Hoffman makes other arguments as well: that this limitation was not on the face of the warranty, as required by the MMWA, and is thus void; that the reduction of limitation period was unconscionable; and that the doctrine of equitable tolling—which would toll the limitation period based on the time the RV was being repaired and Thor's statements to forestall litigation—would extend the limitation period. The Court does not reach Hoffman's other arguments based on its resolution of his two main arguments.

In response to the plaintiffs' argument in <u>Merricks</u> that the limitation period was not part of "the original agreement," the <u>Merricks</u> court concluded that the plaintiffs there "effectively agreed to the reduced limitations period" by "purchasing the RV and then receiving the benefits of the written warranties." <u>Id.</u> at 5. The Court declines to apply this reasoning of <u>Merricks</u> here.

First, while the plaintiffs in <u>Merricks</u> received warranty information prior to purchasing their RV and signed a form stating that they had received and read a copy of the written warranty provided by the manufacturer, Hoffman has alleged that he received no warranty information prior to his RV purchase. This factual distinction alone renders <u>Merricks</u> inapplicable to the present action.

Second, and more importantly, the <u>Merricks</u> court's interpretation does not square with the text of the statute. "By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." Va. Code Ann. § 8.2-725(1). The use of the definite article "the," combined with "original agreement," suggests that in this context, Hoffman could not accept the limitation period by passive acceptance of the RV without objection to the pertinent warranty provision. Instead, this section indicates that the parties must specifically agree to the period of limitation, not just the warranty in general. In other words, § 8.2-725(1) contemplates a more formal mutual agreement than Thor advances as sufficient. There is no indication that Hoffman was ever aware of the limitation period, let alone any indication of agreement by Thor and Hoffman on the issue. Thor does not identify how the parties agreed to reduce the limitation period "by the original agreement"; therefore, the Court concludes that they did not so agree.

Even if the parties did agree to a reduced limitation period, Hoffman's claims are still timely. As explained previously, language on the third page of the express warranty requires that

a buyer file suit within ninety days after the expiration of the "warranty coverage period described above." See ECF Nos. 32-1 at 11, 36-1 at 12. Two warranty periods are "described above": a twelve-month general warranty and a twenty-four-month skeleton frame warranty. See ECF Nos. 32-1 at 9, 36-1 at 10. Two alternative interpretations are thus possible: (1) the limitation period applies to each warranty period—which would create a fifteen-month limitation period for general claims and a twenty-seven-month limitation period for skeleton frame claims; or (2) the limitation period applies after the total expiration of all warranty periods—which would create a single twenty-seven-month limitation period as to all claims. Thor urges the first interpretation and Hoffman the second.

The second interpretation is more consistent with the text; or at the very least, the provision is ambiguous and that ambiguity should be construed against the drafter. A twenty-seven-month limitation period is more consistent with the text because the first interpretation would entail the limitation period language recognizing two warranty periods, but the text refers to the warranty period in the singular. See ECF Nos. 32-1 at 11, 36-1 at 12 ("the warranty coverage period described above."). If the first interpretation were indeed correct, the limitation clause should read, "the warranty coverage periods described above," "after the expiration of each of the warranty coverage periods described above," or even "after the expiration of the applicable warranty coverage period described above." In other words, if the limitation period did in fact reference two separate warranty periods for two types of claims, the text would have so indicated. The alternative interpretation favored by Hoffman; that the ninety-day limitation period only applied after the expiration of the singular, total warranty period; is fully consistent with the text of the limitation clause.

Even if the meaning of the clause is ambiguous such that no meaning can be accurately determined, then the familiar rule of contract interpretation prevails that "[i]n the event of an ambiguity in the written contract, such ambiguity must be construed against the drafter of the agreement." Martin & Martin, Inc. v. Bradley Enters., Inc., 504 S.E.2d 849, 851 (Va. 1998) (citing Mahoney v. NationsBank of Va., 455 S.E.2d 5, 9 (Va. 1995); Winn v. Aleda Constr. Co., 315 S.E.2d 193, 195 (Va. 1984)); see also Cappo Mgmt. V, Inc. v. Britt, 711 S.E.2d 209, 211 (Va. 2011) (applying principle in the context of the VUCC). Thor drafted the warranty terms and the language of the limitation period. To the extent there is an ambiguity, the Court must construe it against Thor.

In summary, the Court concludes that the parties, "by the original agreement," did not agree to reduce the limitation period. Even if they did agree to a reduced limitation period, that period should be twenty-seven months, either because that is the better reading of the text or because the meaning of the clause is ambiguous and ambiguity is construed against the drafter of the document. For these reasons, the Court denies the Motion to Dismiss as to claims against Thor.

### C. Claims against Daimler Trucks

There are two claims against Daimler Trucks: one for breach of express and implied warranties and another for violation of Virginia's Lemon Law. Daimler argues that the claim for breach of warranties fails to state a claim and that the Lemon Law claim is untimely.

### 1. Express and Implied Warranty Claims

Daimler offered Hoffman a written warranty, see ECF No. 46-2, but argues it properly disclaimed all implied warranties. Hoffman correctly notes that once a supplier gives a written warranty, this supplier cannot wholly disclaim implied warranties. See 15 U.S.C. § 2308.

Daimler purports to disclaim all implied warranties in its written warranty, but this attempt contravenes the MMWA. Hoffman's implied warranty claims against Daimler survive. See id.

Daimler also argues that Hoffman's allegations against it on the warranty claims contain insufficient facts to state a plausible claim for relief. The Court agrees. The Amended Complaint lists at least twenty-one "defects and non-conformities" in the RV, ECF No. 28 ¶ 11, but fails to specify which of these defects are attributable to Daimler. Thus, Hoffman's general allegations against Daimler are insufficient under Twombly and Iqbal to state a plausible claim for relief. See Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) ("[T]he burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants."). Thus, the Court grants Daimler's Motion to Dismiss, but grants Hoffman leave to amend. Hoffman's response to Daimler's Motion to Dismiss includes more detail as to his interactions with Daimler, ECF No. 54 at 3-4, and Hoffman could add this information to the complaint to help provide some of the required detail. If Hoffman can provide greater factual detail to his claims against Daimler, akin to the information contained in his response to Daimler's Motion to Dismiss, the claims would likely survive a motion to dismiss.[14]

## 2. Lemon Law Claim

Hoffman also alleges that Daimler violated the Virginia Lemon Law, and Daimler argues that this claim is untimely. Hoffman first filed the original complaint in state court on April 26, 2012, just a few days before the expiration of the eighteen-month statute of limitations for the Lemon Law. The Lemon Law claim originally named Thor as the defendant, but Hoffman

---

[14] The Court does not address Daimler's argument that the Amended Complaint does not allege that Daimler was given the required notice of the RV's defects, see Va. Code Ann. §§ 8.2-607(3)(a) (VUCC) and 59.1-207.13 (Lemon Law), because a motion to dismiss is a premature stage to address this factual issue. Semitekol v. Monaco Coach Corp., 582 F. Supp. 2d 1009, 1018 (N.D. Ill. 2008); Campbell v. Ethex Corp., 413 F. Supp. 2d 738, 740 (W.D. Va. 2006). If Hoffman desires, however, he may include more information about the provided notice in his Second Amended Complaint. The Court also does not address Daimler's claim that Hoffman did not plead allegations of misrepresentation with particularity because Hoffman does not assert any claim for misrepresentation or fraud.

changed the named defendant to Daimler in the Amended Complaint after Thor argued that the Lemon Law does not apply to the completed motor home, just the "self-propelled motorized chassis," Va. Code Ann. § 59.1-207.11, which Daimler manufactured. See Parks v. Newmar Corp., 384 F. Supp. 2d 966, 969 (W.D. Va. 2005) (holding that the Lemon Law only applies to the chassis, not the completed motor home). But see Reynolds v. Freightliner, et al., No. 4:07-CV-00001, 2007 WL 2220569, *5-7 (W.D. Va. 2007) (holding that the Lemon Law applies to completed motor homes). The Amended Complaint was filed on December 14, 2012, and Hoffman served Daimler and Drew soon after, on or about January 10, 2013. ECF Nos. 38 & 39. Daimler argues that statute of limitations bars the amendment because the amendment does not relate back to the filing of the original complaint.

Rule 15 governs amended pleadings; Rule 15(c) governs relation back. Rule 15(c) states:

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
(A) the law that provides the applicable statute of limitations allows relation back;
(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
(i) received such notice of the action that it will not be prejudiced in defending on the merits; and
(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c). In the words of the Fourth Circuit, "[t]hese requirements of Rule 15(c) reflect a subtle and complex compromise of two competing policies." Goodman v. Praxair, Inc., 494 F.3d 458, 467 (4th Cir. 2007) (en banc). On one hand, the Federal Rules favor liberal amendment to pleadings. Id. "On the other hand, statutes of limitations are legislative determinations that give defendants predictable repose from claims after the passage of a

specified time." Id. "In light of these policies, Rule 15(c) must be understood to freely permit amendment of pleadings and their relation-back so long as the policies of statutes of limitations have been effectively served." Id. (citing 3 James Wm. Moore, et al., Moore's Federal Practice § 15.19[3][a] (3d ed. 1997)).

Pursuant to Rule 15(c), Hoffman's claims can relate back under either state law (Rule 15(c)(1)(A)) or under the Federal Rules (Rule 15(c)(1)(B) & Rule 15(c)(1)(C)). See Saxton v. ACF Indus., Inc., 254 F.3d 959, 963 (11th Cir. 2001) ("[I]f an amendment relates back under the law that provides the applicable statute of limitations, that amendment relates back under Rule 15(c)(1)[(A)] even if the amendment would not relate back under the federal law rules.") (citing 6A Wright, Miller & Kane, Federal Practice and Procedure § 1503 (2d ed. Supp. 2001) (noting that "[i]n 1991, Rule 15(c) was amended to clarify that relation back may be permitted even if it does not meet the standards of the federal rule if it would be permitted under the applicable limitations law")). By its own terms, Rule 15(c)(1)(C) governs when "the amendment changes the party or the naming of the party against whom a claim is asserted." Fed. R. Civ. P. Rule 15(c)(1)(C). Because Hoffman changed the party against whom he asserted Claim 2 in the Amended Complaint, his amendment must relate back under 15(c)(1)(C) or under state law pursuant to 15(c)(1)(A). For the reasons discussed below, the Court concludes that Hoffman's Lemon Law claim against Daimler relates back under 15(c)(1)(A) and therefore does not address whether it would also relate back under 15(c)(1)(C).

The pertinent Virginia statute that governs relation back is § 8.01-6.1. That statute provides:

> [A]n amendment of a pleading changing or adding a claim or defense against a party relates back to the date of the original pleadings for purposes of the statute of limitations if the court finds (i) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the

> original pleading, (ii) the amending party was reasonably diligent in asserting the amended claim or defense, and (iii) parties opposing the amendment will not be substantially prejudiced in litigating on the merits as a result of the timing of the amendment.

Va. Code Ann. § 8.01-6.1. As to the first requirement, the Court concludes that the amendment consists of the same conduct, transaction, or occurrence as in the original pleading—the purchase and subsequent attempted repair of an allegedly defective RV.

Second, regarding whether Hoffman was reasonably diligent in asserting the amended claim, the Court notes that Virginia courts have found reasonable diligence in circumstances comparable to the present case. Compare Primrose Dev. Corp. v. Benchmark Acquisition Fund I Ltd. P'ship, 47 Va. Cir. 296, at *4 (1998) (finding reasonable diligence when amended complaint that added claim was filed six months after original and the litigation was still in early stages); Hart v. Savage, No. L-04-1663, 2006 WL 3021110, at *4 (Va. Cir. Ct. Oct. 19, 2006) (finding reasonable diligence when at least ten weeks—and as much as five months—passed between knowledge that the claim should be amended and filing of the motion to amend the complaint); Stanley v. Storck, 61 Va. Cir. 515, at *2 (2003) (finding reasonable diligence when amended claim was brought one year after plaintiff learned the information underlying the amended claim, even though the defendants claimed that amendment was necessary because of a legal, not factual, misunderstanding); with Hoover & Strong, Inc. v. Travelers Ins. Co., 66 Va. Cir. 34, at *2 (2004) (finding plaintiff not to have been reasonably diligent when it waited two years and four months to file motion for leave to amend); James v. Ashland Ford-Mercury, Inc., 46 Va. Cir. 272, at *3 (1998) (finding plaintiffs not to be reasonably diligent when they sought to amend at least six months after obtaining information underlying the amendment and there was no indication they could not have obtained it in the two years previous to that had they attempted to do so).

In the present case, Thor argued that it was not the proper party for the Lemon Law claim in a motion to dismiss filed in June 2012. The case was then transferred to this district in August 2012. Hoffman, Thor, and Camping World were scheduled to present oral argument on this motion to dismiss on October 22, 2012, where Hoffman would presumably have argued in favor of the Reynolds interpretation of the Lemon Law as it applied to motor homes—under which Thor is a proper defendant—instead of the interpretation in Parks, where Daimler is the only proper defendant. Just before the hearing, however, Thor and Camping World allowed Hoffman to amend his complaint. Hoffman then filed the Amended Complaint on December 14, 2012, changing the defendant named in the Lemon Law claim to Daimler. The less than two-month delay in filing the Amended Complaint is not sufficient grounds for finding lack of reasonable diligence, especially in light of the state court rulings that allow significantly longer periods of delay. Therefore, the Court concludes that Hoffman acted with reasonable diligence in amending the Lemon Law claim.

The Court also concludes that Daimler will not be prejudiced in defending the Lemon Law claim on the merits. Significantly, Daimler received notice of the Lemon Law claim at the exact same time it received notice of the warranty claim—when it was served for the first time in January 2013. Daimler argues that because it did not receive notice of the claim within the limitations period, the amendment should not relate back. This argument fails to recognize that the "limitation period" referred to in the relation back context includes the allowable time for service of process. See Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010) ("The 'limitation period' for purposes of analyzing whether the newly added defendant received notice and should have had knowledge of the action [for purposes of Rule 15(c)] is the Federal Rule of Civil Procedure 4(m) service period ('Rule 4(m)')."); Eschbacher v. Chesterbrook Shopping Ctr., 49

Va. Cir. 88, at *3 (1999) ("Virginia law plainly states that the statute of limitations is tolled upon the filing of the lawsuit, and not upon the time of service on the defendant. Put differently, as long as the suit is filed in time, the limitations requirement is satisfied. Service of process may then take up to a year after the filing of the suit."). Daimler was served within both the federal Rule 4(m) service deadline[15] and the Virginia one-year service deadline. See Va. R. Civ. P. 3:5(e). In other words, Daimler did in fact receive notice of the suit within the limitations period under both federal and state rules of civil procedure.

Furthermore, no discovery has taken place and a trial date has not been set. Virginia courts have found no prejudice to a defendant in cases more advanced in the litigation stages than the present case. See Francis v. Woody, 74 Fed. R. Serv. 3d 82, 2009 WL 2371509, at *6-8 (E.D. Va. July 31, 2009) (finding no prejudice when discovery had already begun, but very little had been done, including no depositions having been taken); Hart, 2006 WL 3021110, at *4 (finding no prejudice when an amended complaint changed defendants for a claim, even though both the old and new defendants had all been deposed); Atkins v. Chesler, 50 Va. Cir. 365, at *1 (1999) (finding no prejudice because a trial date had not been set nor had discovery "been substantially completed"); Primrose, 47 Va. Cir. 296, at *4 (finding no prejudice when amended complaint filed six months after original and it appeared that the litigation was in its early stages). In fact, in the Court's own research, the only case to reach a finding of prejudice did so when the plaintiff sought amendment two months before trial. James, 46 Va. Cir. 272, at *3.

---

[15] This period is 120 days after removal to federal court. See Randolph v. Henry, 50 F. Supp. 2d 572, 579 (S.D. W. Va. 1999) (collecting authority holding that service is proper within 120 days after removal, not 120 days from filing in state court); Lawrence v. Hanson, 197 F. Supp. 2d 533, 538-39 (W.D. Va. 2002) (adopting the reasoning of Randolph and explaining why a contrary approach is improper). The Advisory Committee Notes to Rule 15 provide that, for purposes of Rule 15(c), the customary 120 days is extended by court-ordered extensions under Rule 4(m). Robinson, 602 F.3d at 608 ("Rule 15(c)'s notice period incorporates any extension of the 120-day period under Rule 4(m).") (citing Fed. R. Civ. P. 15, Advisory Comm. Notes (1991 Amendment) ("[T]his rule allows not only the 120 days specified in [Rule 4(m)], but also any additional time resulting from any extension ordered by the court pursuant to that rule.")). Both Daimler and Drew were served within the extensions of time ordered by the Court.

Accordingly, because all three elements of relation back for purposes of § 8.01-6.1 have been satisfied, the Court concludes that the Lemon Law claim in the Amended Complaint relates back to the date of the filing of the original complaint, which was filed within the eighteen-month statute of limitations. Therefore, Hoffman's amendment is timely and the Court denies Daimler's Motion to Dismiss the Lemon Law claim.

## D. Claims against Drew

Hoffman alleges that Drew, an RV components supplier, breached express and implied warranties when components it produced and delivered to Thor were defective. In response, Drew argues first that Hoffman's claims are untimely and second that his claims fail on the merits.

### 1. Timeliness of the Claims

Drew first claims that Hoffman's claims are untimely because they were not brought within the one-year warranty period. The warranty and limitation periods, however, are not identical concepts. The warranty period covers the component parts for a specified period of time; in other words, it defines the time in which the warrantor has a responsibility to repair or replace the covered parts. The limitation period, however, places constraints on the time in which the buyer must sue. Drew's limited warranty period is plainly limited to one year, see ECF No. 50-2 at 1 ("This warranty is honored for a period of one (1) year from the date of retail purchase."), but the limited warranty does not even mention a limitation period. Since the parties did not agree to reduce the limitations period "by the original agreement," Va. Code Ann. § 8.2-725(1), the default VUCC statute of limitations applies, which is four years after the breach occurs. Id. "A breach of warranty occurs when tender of delivery is made." Va. Code Ann. § 8.2-725(2). Even accepting Drew's contention that its delivery of the components to Thor is the

pertinent "tender of delivery" for limitation purposes, ECF No. 50-2 at 6 n.3, it has not argued that that delivery occurred before April 26, 2008, four years before Hoffman filed his claim on April 26, 2012. Therefore, because Drew's limited warranty did not displace the default statute of limitations, Hoffman timely filed his claims against Drew.

### 2. Express Warranty

Hoffman alleges that Drew provided a written warranty for its components that Thor incorporated into the completed RV, ECF No. 28 ¶ 28, but Hoffman also claims that he first saw this written warranty in connection with this litigation. ECF No. 55 at 2. Hoffman identified Drew as the warrantor of the allegedly defective parts through Thor's owner's manual, which provided the list of items not warranted by Thor and listed the name and phone number of these component manufacturers. See ECF No. 32-1 at 16. The heading of this list is "SUPPLIERS PROVIDING SEPARATE WARRANTIES," id., implying that these component manufacturers did provide a consumer-facing warranty. Drew claims, among other things, that its limited warranty extends coverage only to the initial purchaser and not to the consumer. See ECF No. 50-2 at 1 ("This [Drew limited] warranty is nontransferable and extends only to the original purchaser acquiring the product directly from [a Lippert Components, Inc.] Facility and shall not be construed to extend to any third party, including, but not limited to, the ultimate purchaser of the end product."). For the reasons discussed below, the Court agrees that Drew properly limited the express warranty to Thor.

The Fourth Circuit has previously addressed a similar but distinct issue in Buettner v. R.W. Martin & Sons, Inc., 47 F.3d 116 (4th Cir. 1995). In Buettner, a commercial laundry had purchased a used piece of laundry equipment "as is," meaning the seller provided no express or implied warranties. Id. at 117. An employee of the laundry was injured by this equipment and

argued that Virginia Code § 8.2-318 created an implied warranty to a third party regardless of the warranties between the seller and purchaser. Section 8.2-318 establishes that

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods;

Va. Code Ann. § 8.2-318. The Fourth Circuit held that this provision did not create an independent warranty in foreseeable users, it merely "confer[red] on foreseeable users of a product both the benefits and limitations of warranties provided to the purchaser." Buettner, 47 F.3d at 119. Since the seller gave no warranty to the purchaser, the remote user also lacked a warranty. Importantly for the present case, the Fourth Circuit noted that while the rights of the third party "can rise no higher than [the] purchaser through which he obtained the implied warranty," id. at 119 (citing Goodbar v. Whitehead Bros., 591 F. Supp. 552, 567 (W.D. Va. 1984), aff'd sub nom Beale v. Hardy, 769 F.2d 213 (4th Cir. 1985)), **§ 8.2-318 "in no way purports to limit a seller's ability to disclaim warranties to foreseeable users."** Id. at 118 (emphasis added).

The context of the present case is different from in Buettner because here the original seller did in fact offer an express warranty to the buyer. In the absence of any other clause in the limited warranty, that warranty would extend to foreseeable users of the product despite the lack of privity between the user and the original seller. Va. Code Ann. § 8.2-318; see also Buettner, 47 F.3d at 118 ("[Section] 8.2-318 . . . simply preserves for remote users the warranties already enjoyed by an immediate purchaser."). As observed by the Fourth Circuit, however, an original seller is still free to disclaim warranties as to foreseeable users. Buettner, 47 F.3d at 118; accord McMahon v. Advance Stores Co., Inc., 705 S.E.2d 131, 138-143 (W. Va. 2010) (Davis, C.J.,

concurring) (collecting numerous cases and stating that "no court in the country has invalidated an express warranty that limited replacement or repair of a product to the original purchaser"). The Drew limited warranty plainly extended only to the initial purchaser and Hoffman is not entitled to enforce its protections.[16] Therefore, the Court grants Drew's Motion to Dismiss on the express warranty claim.

### 3. Implied Warranty

Drew also argues that it effectively disclaimed all implied warranties. On the second page of the warranty, Drew purports to disclaim all implied warranties. Hoffman argues that this attempt is ineffective because Drew made a written warranty to him, a consumer, and the MMWA prohibits Drew from disclaiming the implied warranties when it provides a written warranty to a consumer. The Court concludes that the MMWA is not applicable because Drew did not offer Hoffman a "written warranty" under the MMWA. Accordingly, the MMWA's limitation on the disclaimer of implied warranties is not applicable and the VUCC governs the determination of whether Drew validly disclaimed these warranties.

The relevant portion of the MMWA states: "No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product." 15 U.S.C. § 2308(a). The Federal Trade Commission's regulations have elaborated on the definition of

---

[16] Hoffman argues that the exclusions in the Drew limited warranty are unenforceable because the warranty was not given to the Plaintiff before the purchase. See ECF No. 55 at 5-6. Indeed, the MMWA and its attendant regulations generally require that written warranties "be made available to the consumer (or prospective consumer) prior to the sale of the product to him." 15 U.S.C. §2302(b); see also 16 C.F.R. §§ 702.2, 702.3. Here, however, Hoffman's rights are derivative of Thor's; put plainly, as long as the limitations are valid against Thor, they are valid against Hoffman. See Goodbar, 591 F. Supp. at 567. The non-provision of the warranty to Hoffman pre-purchase is thus irrelevant. The Court also expresses no opinion on the viability of any potential claim against Thor for representing that Drew warranted its components to consumers.

"written warranty" found in 15 U.S.C. § 2301(6), especially in respect to component manufacturers:

> The Magnuson–Moss Warranty Act generally applies to written warranties covering consumer products. Many consumer products are covered by warranties which are neither intended for, nor enforceable by, consumers. A common example is a warranty given by a component supplier to a manufacturer of consumer products. (The manufacturer may, in turn, warrant these components to consumers.) The component supplier's warranty is generally given solely to the product manufacturer, and is neither intended to be conveyed to the consumer nor brought to the consumer's attention in connection with the sale. Such warranties are not subject to the Act, since a written warranty under section 101(6) of the Act must become "part of the basis of the bargain between a supplier and a buyer for purposes other than resale."

16 C.F.R. § 700.3(c).

The present case is on all fours with the cited example. Drew did not intend the limited warranty to be given to or enforced by the consumer. See ECF No. 50-2 at 1 ("This [Drew limited] warranty is nontransferable and extends only to the original purchaser acquiring the product directly from [a Lippert Components, Inc.] Facility and shall not be construed to extend to any third party, including, but not limited to, the ultimate purchaser of the end product."). The Drew limited warranty was given solely to the product manufacturer (Thor), and was "neither intended to be conveyed to the consumer nor brought to the consumer's attention in connection with the sale." 16 C.F.R. § 700.3(c). Indeed, Hoffman saw the Drew limited warranty for the first time in connection with Drew's Motion to Dismiss. ECF No. 55 at 2 ("Plaintiff's first sight of Drew's warranty is an attachment to its Memorandum in Support of its Motion to Dismiss."). The Drew limited warranty is therefore not a "written warranty" under the MMWA.[17] Because the MMWA is inapplicable, the VUCC governs the disclaimer of the implied warranty.

---

[17] Hoffman points out that Thor implied in its limited warranty that Drew was providing a warranty directly to the consumer. See ECF No. 32-1 at 16 (listing Drew, the components it manufactured for the completed RV, and its phone number under the heading "SUPPLIERS PROVIDING SEPARATE WARRANTIES"). The regulation, however, focuses on the written terms of the warranty and the intent of the warrantor in determining whether it is a

The main question under the VUCC is whether Drew's disclaimer of the implied warranties is "conspicuous" under § 8.2-316. Conspicuous "means so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it." Va. Code Ann. § 8.1A-201(b)(10). The disclaimer of implied warranties is on the second page of a three-page limited warranty. The text size of the disclaimer is roughly twice the size of any other in the limited warranty and the entire disclaimer paragraph appears in capital letters. In addition, it is set off from the rest of the text by horizontal lines above and beneath the disclaimer paragraph. The Court determines that a "reasonable person against whom it is to operate ought to have noticed it." Id. Additionally, the disclaimer mentions "merchantability" as required under §8.2-316(2) to disclaim the implied warranty of merchantability. Drew thus validly disclaimed all implied warranties as to Thor. It is clear from Buettner that an effective disclaimer of warranties by the seller to the buyer is effective as to the remote user. 47 F.3d at 118-19. Therefore, because Drew effectively disclaimed the implied warranties as to Thor (the buyer) then they are also disclaimed as to Hoffman (the remote user). The Court grants Drew's Motion to Dismiss Hoffman's implied warranty claim against it.[18]

### E. Plaintiff's Motion to Dismiss Camping World's Counterclaim

Hoffman also filed a Motion to Dismiss Camping World's Counterclaim, which seeks attorney's fees based on a provision in the Buyer's Order. The Court denies the Motion to Dismiss the Counterclaim because it is premature at this juncture. The Court will determine the applicability of this provision at the conclusion of the case should it become necessary.

---

written warranty. If the opposite were true, then the actions of a component part buyer could expand the liability of the component part seller without any action on the seller's part. Thor's actions, therefore, cannot expand the liability of Drew and have no impact on the Court's analysis as to Hoffman's claims against Drew.

[18] The Court expresses no opinion on whether Thor could assert a claim against Drew for breach of the limited warranty.

On a related note, the Court's docket lists Thor and Camping World as counterclaimants seeking attorney's fees. The counterclaim for fees is based on a provision in the Buyer's Order, a contract between Hoffman and Camping World. There being no apparent contractual or statutory provision entitling Thor to attorney's fees, see Mullins v. Richlands Nat. Bank, 403 S.E.2d 334, 335 (Va. 1991) ("Generally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant."), the Court will terminate Thor as a counterclaimant.

## V.  CONCLUSION

For the foregoing reasons, Thor and Camping World's Motion to Dismiss, ECF No. 31, is GRANTED IN PART and DENIED IN PART; GRANTED on Hoffman's express warranty claim against Camping World and DENIED on all other claims against Camping World and Thor. Daimler's Motion to Dismiss, ECF No. 45, is GRANTED IN PART and DENIED IN PART; GRANTED with leave to amend on the warranty claims and DENIED on the Lemon Law claim. Drew's Motion to Dismiss, ECF No. 50, is GRANTED. Hoffman's Motion to Dismiss Camping World's Counterclaim for Attorney's Fees, ECF No. 40, is DENIED WITHOUT PREJUDICE AS PREMATURE. This motion may be raised later.

An appropriate order shall issue this day.

ENTER: This __11th__ day of April, 2013.

_____
Hon. James C. Turk
Senior United States District Judge